[No. 38852. Department One. June 15, 1967.]

LEONARD SCHORZMAN et al., Appellants, v. ALTA M. KELLY et al., Respondents.*

Hennessey, Curran, Jansen, Bentley & Kelly and Leonard F. Jansen, for appellants.

Engst & Phelps and Edward T. Engst, for respondents.

BARNETT, J.†—On September 20, 1955, the plaintiffs Schorzman leased for a term of years from Ida M. Quirk farm lands situated in the counties of Douglas and Grant, state of Washington. The lease was notarized by the plaintiffs on September 20, 1955, and by Ida M. Quirk on October 1, 1955. The time provision of the lease provides as follows: "WITNESSETH, that the landlord hereby leases to the tenants for ten years, commencing on January 1, 1956, and ending December 31, 1966, . . . ."

*Reported in 429 P.2d 217.

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Subsequent to the execution of the lease Ida M. Quirk died and Alta M. Kelly succeeded to her interest. On February 3, 1965, the defendant Kelly advised each plaintiff by written notice that the lease would expire December 31, 1965, being the end of the 10-year term and would not be renewable thereafter. On April 12, 1965, Alta M. Kelly entered into a written lease with Oscar Schuh covering the property in issue. Defendant Schuh began to prepare a portion of the land for seeding the crop to be harvested in 1966, in accordance with another provision in the Schorzman lease granting that right if the land was sold or rented to another tenant. Whereupon the plaintiffs brought this action against Kelly and Schuh in which plaintiffs seek to enjoin them from asserting any claim adverse to the plaintiff's in and to the non-pasture and non-stubble portions of the land.

From an adverse ruling of the trial court the plaintiffs press this appeal.

The trial court found:

> THAT the evidence is clear, that it was the mutual intent of the parties to the lease of September 20, 1955, and that it be for a term of ten crop years, which term commenced January 1, 1956 and ended on December 31, 1965, and that it was a drafting error to have stated that the ten year term would end on December 31, 1966, and that such termination date should have read "December 31, 1965."

And,

> THAT the Plaintiffs were already in possession of the lands covered by the lease of September 20, 1955 at the time of the execution under a prior lease arrangement.

It thereafter concluded:

> THAT the lease of September 20, 1955 terminates in fact on December 31, 1965 and that the language in the lease indicating the term expired "December 31, 1966", should be reformed to read "December 31, 1965."

Hence, it was the conclusion of the trial court that the defendants have full right to go upon the leased land to make repairs, fall plow and sow wheat and other grain and do

those other things usual and customary to the preparation of the land for the subsequent cropping, all without the consent or interference of the plaintiffs.

 The plaintiffs assign error to the court's refusal to admit extrinsic evidence regarding the termination date of the lease. This assignment is not argued, and no authority is cited; therefore it will not be considered. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 372 P.2d 193 (1962).

The other assignments of error present the pivotal question. "When does the lease of September 20, 1955, terminate?" The plaintiffs contend that it terminated December 31, 1966, and the defendants argued that it terminated December 31, 1965.

The trial court gave the following oral opinion on the question presented by this appeal.

The only thing before the court is the interpretation of the Lease, which is marked Exhibit "A".

As you stated, the court has drawn a number of Leases in its day, especially when practicing law in the Moses Lake area. In trying to estimate the number of farm Leases I have drawn a year, I imagine they run all the way from 15 to 30.

But looking at the Lease as a whole, page 1 through page 5, I did note the dates and tried to speculate as to who prepared it. There is some talk that this is more or less a Renewal Lease. Maybe the tenants copied the old Lease, had it notarized and mailed it to the landlord for their signature. I don't know. I don't believe it is necessary for the court to speculate.

I believe if the court or any person who has drawn Farm Leases were given four to five points and you added a Farm Lease that was dated September 20, 1955, for a term of ten years, and the signature of the tenants were notarized on September 20th and the landlord on October 4th, it would be very simple, just with that, to know that the Lease is for ten crop years, period. But the Lease wouldn't commence during the crop year of 1955, it would commence with '56, and run for ten years.

There is only one error in the Lease. "The landlord hereby leases to the tenants for ten years, commencing January 1, 1956, and ending December 31, *1960*." (Read as: Nineteen sixty......) It is correct right to there. The only

thing is the last figure. We hear of five-year leases, ten-year leases. That came to my mind, too. I don't recall having drawn a farm lease for 11 years or 13 years. I wouldn't doubt it has been done, but the type of lease, wheat land, is usually ten years, five years, and I certainly feel that it is no more than a typographical error when the '6' was the last figure. I am sure you would not be in court quarreling should it have read, "Ten years, commencing January 1, 1956 and ending January 31, 1975." You certainly wouldn't say, "Well, no, it is a twenty-year lease." That is what the figures say, we are wrong on the ten. I am not concerned whether it is eleven years, twelve years. It was the intent of the parties by reading the lease that it was a lease for ten crop years, and by the lease being executed late in the fall or winter of 1955, it commenced in the cropyear of 1956, and runs for ten years.

Therefore, the court has ruled that the termination date is December 31, 1965. . . .

■■ Our objective is to determine the intent of the parties to the lease. *Felton v. Menan Starch Co.,* 66 Wn.2d 792, 405 P.2d 585 (1965); *Chaffee v. Chaffee,* 19 Wn.2d 607, 145 P.2d 244 (1943). The defendants do not argue with the various rules of construction for contracts cited by the plaintiffs. Basically, the plaintiffs are contending that the specific and more necessary language in the term of rental provision, *i.e.,* "commencing on January 1, 1956 and ending December 31, 1966," shall have legal precedence over the general language, "for ten years," in the interpretation of the lease. The plaintiffs correctly state rules of construction; however, they are inconclusive and not controlling in view of other rules which apply in this case. We must keep in mind that the commencement date of January 1, 1956, is uncontradicted. It would be simple error for the scrivener when computing the ending date of the term to add to the beginning year, 1956, ten and· come up with 1966 for the ending date. This would be correct if one counted from January to January, but in this case the lease deals with complete years, beginning January 1 and ending December 31. Add 10 calendar years to January 1, 1956 and you have a termination date of December 31, 1965. "In case of an in-

consistency between words and figures in a contract the words govern." 17A C.J.S. *Contracts* § 311 at 171. The lease contains an inconsistency to which this rule applies.

In addition, we think the words "for ten years" in conjunction with the unquestioned commencement date, January 1, 1956, outweigh the expression of the ending date. In *Klein* v. *Miles*, 35 A.2d 243, 244 (D.C. 1944), the time provision of a lease was in question. It too had a term stated "one year," and the beginning and ending dates which made the lease period one year and one day. The court resolved the problem in favor of the stated one year term. We quote from the opinion:

> In the construction of a contract the primary rule is that the court endeavor to ascertain the substantial intent of the parties as expressed by their language; and we think it is evident that the parties intended to create a term of one year beginning December 15, 1941, and did not intend, as the tenant maintains, to create a term of a year and a day. In our opinion the expressions "one year" and "commencing on the 15th day of December, 1941," outweigh the expression "ending December 15, 1942." (Footnote omitted.)

In the circumstances of this case we conclude that the lease was intended to end December 31, 1965; we affirm the decision of the trial court.

FINLEY, C. J., WEAVER and ROSELLINI, JJ., concur.