[No. 138-41387-3.    Division Three.    December 22, 1970.]

ALTA M. KELLY *et al., Respondents,* v. LEONARD SCHORZMAN *et al., Appellants.*

*Leonard F. Jansen* (of *Hennessey, Curran, Jansen & Kelly*), for appellants.

*Edward T. Engst* (of *Engst, Phelps & Young*), for respondents.

EVANS, C. J.—On September 20, 1955 Ida Quirk, plaintiff Kelly's predecessor in interest, leased wheat land to defendants Leonard and Arthur Schorzman. The lessor retained for herself and her successors in interest the right to reenter during the last year of the Schorzmans' tenancy, and prepare the land for the next year's harvest. The lease was "for *ten years,* commencing January 1st, 1956, and ending December 31, *1966,* . . ." (Italics ours.) Alta Kelly interpreted the lease as one for 10 years expiring at the end of 1965. On February 3, 1965 she notified her tenants Schorzman that their lease would not be renewed beyond December 31, 1965. Shortly thereafter she leased the land to plaintiff Oscar Schuh, with his tenancy to commence on January 1, 1966.

In the fall of 1965 Schuh entered upon the land and commenced seeding winter wheat for the harvest of 1966. After 134 acres had been seeded he and plaintiff Kelly were enjoined from further entry upon the premises by a restraining order obtained ex parte by defendants Schorzman and later, after hearing, by a temporary injunction. Their action was based upon the contention that the Quirk-Schorzman lease was for 11 years, expiring December 31, 1966.

A trial on the merits of the injunction was held on January 14, 1966. The trial court interpreted the ambiguity as to the termination date of the lease in favor of plaintiffs Kelly and Schuh, holding the lease to be for 10 years expiring at the end of 1965, and confirming the right of Kelly and Schuh to go upon the land in the fall of 1965 to prepare for the 1966 harvest without interference by plaintiffs Schorzman. Judgment was entered accordingly, the Schorzmans appealed and posted a bond, thus continuing in effect the temporary injunction pending final determination on appeal. They harvested the crop in 1966 and relinquished possession on August 10, 1966. On June 15, 1967 the Supreme Court affirmed the trial court's determination that the termination date of the lease in question was December 31, 1965. *Schorzman v. Kelly*, 71 Wn.2d 457, 429 P.2d 217 (1967).

Thereafter, on October 18, 1967, this action was commenced. Plaintiff Kelly sought double damages for unlawful detention of the premises from January 1, 1966 to August 10, 1966, and for attorney's fees in connection with obtaining the dissolution of the injunction. Plaintiff Schuh sought damages for the net loss of profits he would have received from farming the land during 1966.

This case was originally heard before the Honorable Thomas I. Oakshott. At the conclusion of all testimony Judge Oakshott rendered a memorandum opinion; however, he died prior to making findings of fact and conclusions of law and entering judgment. Thereafter the case was assigned to the Honorable Charles T. Wright, who determined that because of the untimely death of Judge Oakshott it was necessary to grant a new trial.

Upon the new trial, in which the facts as to the cost of producing and the gross proceeds of the crop harvested by the Schorzmans in 1966 were stipulated, the court found the fair rental value of the premises in 1966 to be the landlord's share of the crop, to wit, $14,643.85. This sum was doubled pursuant to the unlawful detainer statute to arrive at the sum of $29,287.70. Against this amount the

trial court credited Schorzmans with the sum of $14,643.85, being the amount previously received by Alta Kelly as her landlord's one-third share of the 1966 crop. The court allowed a further credit of $4,250 as repayment for summer fallow prepared by Schorzmans in 1965, for a net judgment to Alta Kelly of $10,393.85 for the unlawful detainer. Judgment was also entered for Alta Kelly in the sum of $2,400 as reasonable attorney's fees incurred in obtaining dissolution of the temporary injunction of 1966. The trial court found the net loss of profits to Schuh, after deducting total production costs in the sum of $11,188, was $18,095.70, and entered judgment accordingly.

Defendants first assign error to the granting of a new trial by the Honorable Charles T. Wright. No appeal was taken from that order and the matter comes before this court for the first time in this appeal from the judgment entered by Judge Wright.

CAROA 14(6)(3) specifically provides that an order granting a new trial is an appealable order. Under CAROA 33 notice of appeal must be filed within 30 days after entry of an appealable order. The notice of appeal is jurisdictional. As stated by the court in *In re Estate of Yand,* 23 Wn.2d 831, 835, 162 P.2d 434 (1945):

> The overwhelming weight of authority is to the effect that jurisdiction is conferred upon the appellate court only in the manner provided by statute or court rule, and where there is a failure to comply with the rule providing for perfecting of an appeal, no jurisdiction is conferred.

Since the notice of appeal was not timely filed after entry of the order granting a new trial, this court is without jurisdiction to rule upon the trial court's determination.

Defendants next assign error to the trial court's entry of judgment for double damages under the unlawful detainer statute, RCW 59.12.030. They base this contention upon the fact that they were not in possession of the property at the time the action was commenced. Alta Kelly argues that the present case is an action for damages for unlawful detainer

and not an unlawful detainer proceeding, and in an action for damages for unlawful detainer possession by the tenant is not necessary.

■ The purpose of the unlawful detainer statute is to provide a basis for rapid recovery of real property.

Unlawful detainer actions are statutorily created summary proceedings, primarily designed for the purpose of hastening recovery of possession of real property. [Cases cited omitted.] The principal subject matter of the action is the possession of the subject property.

*MacRae v. Way*, 64 Wn.2d 544, 546, 392 P.2d 827 (1964).

Because possession of the leased premises is an essential element of an action in unlawful detainer, abandonment of the premises by the tenant prevents the landlord from obtaining a judgment under the statute.

Abandonment is a defense to an action for forcible entry and detainer because the facts of abandonment dispute the basic requirement of prior possession. It is not exclusively an affirmative defense, but goes further. It affirmatively denies the allegations of possession.

*Tuschoff v. Westover*, 65 Wn.2d 69, 73, 395 P.2d 630 (1964).

In the present case it was undisputed that defendants relinquished possession of the property prior to the commencement of the unlawful detainer action. There was no question of possession to be litigated at the time summons was served. Oscar Schuh, Alta Kelly's tenant, had accepted the property and thereafter commenced farming operations. Since plaintiff Kelly could not bring an action under the unlawful detainer statute, she cannot take advantage of the remedy of double rent provided for therein. Alta Kelly is, therefore, only entitled to the rental value of the property. This sum of money, in the form of the landlord's share of crops of 1966, had been paid to Kelly prior to trial.

■ The court further notes that defendants were not served with the special statutory summons required in unlawful detainer actions under RCW 59.12.070. Since an unlawful detainer action is a special proceeding, there must be substantial compliance with the procedural requisites.

*Sowers v. Lewis,* 49 Wn.2d 891, 307 P.2d 1064 (1957). Since plaintiff employed the general form of summons, she failed to comply with the procedural requisites and the court did not have jurisdiction to proceed under the unlawful detainer statute. However, because the general form of summons was employed, the court did have jurisdiction to grant the remaining grounds of relief requested by plaintiffs. If the special summons were used the court would have had an insufficient basis to assert jurisdiction over those claims. *Muscatel v. Storey,* 56 Wn.2d 635, 354 P.2d 931 (1960).

Defendants next assign error to damages awarded Schuh. The trial court entered judgment for Schuh under RCW 7.40.200 for damages he incurred because of the issuance of the injunction to stay proceedings. RCW 7.40.200 provides:

> If an injunction to stay proceedings after verdict or judgment in an action for the recovery of real estate, or the possession thereof, be dissolved, the damages assessed against the party obtaining the injunction, shall include the reasonable rents and profits of the lands recovered, and all waste committed after granting injunction.

It is uncontradicted that the injunction prevented plaintiff Schuh from working the farm during a portion of the period in which the appeal was pending. The purpose of RCW 7.40.200 is to compensate parties who have been denied the benefits of real property because of an injunction to stay proceedings. The trial court held that Schuh would have obtained a profit of $18,095.70 during the period in which the injunction was in effect if he had farmed the land. The damages allowed plaintiff reflected an $11,188 credit given to defendant for the cost of production. The trial court was correct in its determination.

Defendant next contends the trial court was in error in granting reasonable attorney's fees for dissolution of the temporary injunction in the first case.

> If injunctive relief is the sole purpose of the suit, and a temporary injunction has issued upon notice and hearing pending trial on the merits, counsel fees are recoverable as damages resulting from the temporary injunction if

the injunction be dissolved at trial. But, where injunctive relief is not the sole purpose of the suit and only incidental or ancillary thereto, counsel fees as damages are recoverable only for services reasonably performed in attempting to quash the temporary injunction and not for professional services rendered in the trial on the merits.

*Cecil v. Dominy,* 69 Wn.2d 289, 293, 418 P.2d 233 (1966). After the temporary restraining order was issued in 1965 the only available means plaintiff Kelly had to regain possession was by pursuing the injunction procedure hearing on the merits. The sole purpose of that hearing and subsequent appeal by Schorzman was to prevent plaintiffs from entering the property during the period in which plaintiffs claimed they had the right to possession. The granting of attorney's fees was, therefore, proper.

Plaintiff Kelly cross-appeals and assigns error to the court's computation of damages awarded in the unlawful detainer action. The trial court allowed a $4,250 credit to the defendants for summer fallow prepared by them in 1965. This was error. According to a stipulation of the parties, credit was to be allowed for summer fallow performed by Schorzman in 1965 only if Kelly received the gross proceeds of the 1966 crops. She did not receive the gross proceeds of that crop; she received only her one-third landlord's share. Furthermore, a credit to Schorzman of $4,250 for the 1965 summer fallow was reflected in the damages awarded Schuh.

Both plaintiffs claim the trial court should have allowed interest on their judgment from the date on which defendants gave up possession of the farmland, August 10, 1966. At that time, under the stipulated facts, it was a simple mathematical computation to arrive at the amount of damages due plaintiffs.

The rule in Washington is that interest prior to judgment is allowable (1) when an amount claimed is "liquidated" or (2) when the amount of an "unliquidated" claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or

discretion. *See, Mall Tool Co. v. Far West Equip. Co.*, 45 Wn.2d 158, 273 P.2d 652 (1954); *Valley Land Office, Inc. v. O'Grady*, 72 Wn.2d 247, 432 P.2d 850 (1967). Professor McCormick has defined a "liquidated" claim as one where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion. C. McCormick, Damages (Hornbook Series) § 54 (1935).

*Prier v. Refrigeration Eng'r Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968).

Since Alta Kelly received reasonable rental value of her land in the form of her one-third landlord's share of the 1966 crop, and we hold she is not entitled to double damages, her claim to interest from August 10, 1966 is moot. However, the evidence furnished data which made it possible to compute the amount of plaintiff Schuh's loss of profits with exactness, without reliance on opinion or discretion. A definite, ascertainable sum was due Schuh, in the form of liquidated damages, when the defendants relinquished possession of the land in question on August 10, 1966. Plaintiff Schuh is entitled to interest from that date.

Reversed and remanded with instructions to enter judgment in accordance herewith.

GREEN and MUNSON, JJ., concur.