# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TODD G. GLOVER and CHRISTINA S. GLOVER, | No. 83286-7-I |
| Respondents, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| PHILLIP CANADAY, | |
| Appellant. | |

MANN, J. — Phillip Canaday appeals the trial court's summary judgment dismissal of his counterclaim asserting unlawful detainer in an action filed by his tenants for declaratory and injunctive relief, breach of the covenant of quiet enjoyment, and breach of the lease. Canaday also challenges the trial court's determinations, following a bench trial, that he breached the covenant of quiet enjoyment and that the tenants substantially prevailed in the proceeding.

Canaday tried to employ summary unlawful detainer procedures by filing a counterclaim in the tenants' lawsuit without complying with the statutory method of process required to start that special proceeding. Dismissal was proper. But without a finding that Canaday physically interfered with the tenants' possession or use of the

leasehold, the trial court erred in concluding that Canaday substantially deprived the tenants of the peaceable use and enjoyment of the leased premises. Nevertheless, because the trial court did not award damages and the erroneous finding of breach does not undermine the determination that the tenants substantially prevailed, we affirm.

## I. FACTS

Todd and Christina Glover ("the Glovers") and Canaday own adjacent parcels of real property in a rural area of Snohomish County. Before January 4, 2016, the Glovers owned both parcels. The Glovers have lived on the parcel they currently occupy ("the Glover parcel") since 1981 and inherited the adjacent parcel ("the Canaday parcel") from Christina's mother in 2006.

The Canaday parcel is about 1.7 acres in total. The Glovers have historically used more than half of the Canaday parcel, an approximately one-acre pasture area, primarily for their horses and dogs.

In 2016, the Glovers conveyed their interest in the Canaday parcel to Todd's daughter, Juli Glover. Along with that conveyance, the Glovers leased back the pasture area ("the leased area") from Juli.

The lease, which expires in 2034, provides that the Glovers "shall use and occupy the Premises solely for the purposes of pasture, grazing, and maintaining domestic farm animals, gardening, horseback riding, and other equestrian uses, dog training and grooming, and general recreational uses compatible with the nature and location of the Property." The lease requires the Glovers to be "solely responsible" for maintaining any improvements and provides that the landlord has "no obligation

2

whatsoever to maintain or repair" the leased area. According to the lease, any maintenance or repairs required to keep the leased area in "good order" are the Glovers' obligation to be undertaken at their "sole expense."

Under the lease, the Glovers must provide the landlord with "access to the Premises at all reasonable times for the purpose of inspections," or repairs, although the landlord is expressly not obligated to perform any repairs. The lease specifies the type and amount of insurance the Glovers must maintain. The lease also provides that the Glovers "shall have and quietly enjoy the Premises" during the term of the lease.

On February 4, 2019, a few years after she acquired the Canaday parcel, Juli conveyed her interest to Canaday. Juli and Canaday were married in April 2019, but within a year, they separated and Juli moved out.

After the relationship between Canaday and Juli ended, disagreements arose between Canaday and the Glovers over their respective rights under the lease. Among other issues, there was conflict about the extent of Canaday's right to access the leased area, his desire to cut trees, and move and replace fencing on the leased area.

On November 4, 2020, through counsel, Canaday delivered an "Amended Thirty Day Notice to Comply with Lease or Vacate Premises" to the Glovers.[1] The notice cited RCW 59.12.030, a provision of the unlawful detainer statute, and alleged that the Glovers were not in compliance with the 2016 lease because they failed to "grant Landlord access as provided in the Lease to replace the fence, and add a fence to SW side of property, and remove dangerous trees." The notice also alleged noncompliance

---

[1] According to the complaint, Canaday issued an initial notice to comply or vacate on October 23, 2020.

with the lease based on the Glovers' alleged failure to insure the premises as required by the lease, "[e]ncroachment onto Landlord's adjacent property," "[i]nterference with Landlord's use and enjoyment" of his property, and "[f]ailure to provide proper notice."

On November 19, 2020, the Glovers filed a complaint against Canaday for declaratory and injunctive relief, and damages. The Glovers alleged that, beginning in December 2019, Canaday began to assert a right to: 1) inspect the leased area "whenever he wished to," 2) cut down trees on the leased area that appeared to be healthy, 3) install fencing on a portion of the leased area where no fencing currently exists, and 4) replace existing fencing with "barb wire fencing." The Glovers claimed that following Canaday's issuance of the notice to comply or vacate, they had "substantial fear" that Canaday would seek to terminate the lease and begin unlawful detainer proceedings against them. The Glovers asked the court to "construe the lease and hold that there exists no factual or legal basis to support Defendant Canaday's Amended Notice." The Glovers also asserted that Canaday interfered with their right to quiet enjoyment of the leasehold by asserting rights under the lease without legal or factual basis. They asked the court to enjoin Canaday from further interference with their right to quiet enjoyment.

In answer to the complaint, Canaday alleged that the Glovers breached the terms of the lease by 1) refusing to allow him access to the leased area unless they were present, 2) refusing to allow him to replace fencing even though a survey showed that the existing fence encroaches on his property, 3) refusing to allow him to complete fencing and install a gate between the two parcels, 4) refusing to allow him to prune or remove "dangerous" trees, and 5) refusing to maintain adequate insurance coverage.

4

Canaday asserted that the Glovers were unlawfully detaining the premises because they failed to cure their noncompliance with the lease or vacate following receipt of his amended notice and sought a writ of restitution. Besides terminating the lease, Canaday requested an award of damages based on the Glovers' alleged breaches of the lease.

In March 2021, Canaday delivered to the Glovers a second 30-day notice to comply or vacate. Canaday alleged that by "piling" sawdust along the fence line, the Glovers breached the lease and committed "waste."

The Glovers filed a motion for partial summary judgment, seeking dismissal of Canaday's claim for unlawful detainer. After considering the briefing, supporting declarations, and argument, the trial court granted the motion. The order granting partial summary judgment also awarded attorney fees to the Glovers, in an amount to be determined at trial.

The Glovers, Canaday, Juli, and two expert witnesses later testified at a two-day bench trial on the remaining issues. Based on the evidence presented, the trial court resolved several issues identified by the parties in their joint pretrial conference summary.

The trial court found that the Glovers "did not strictly comply" with the lease's provision allowing Canaday reasonable access to the leased area. At the same time, the court concluded that the Glovers' breach was not "material" and that there was no basis to terminate the lease. On the other hand, the court found that Canaday violated the covenant of quiet enjoyment under the lease by demanding that the Glovers adjust their insurance coverage, proposing to remove trees that posed little to no danger, and

5

proposing to replace existing fencing with material not suitable for horses. The court determined that the neither party was entitled to damages because of the lack of specific evidence to support the claims for damages.

To resolve the Glovers' claims for declaratory and injunctive relief, the court determined that two-hour visits up to six times per year amounts to "reasonable" access under the lease. The court permanently enjoined Canaday from future interference with the Glovers' right to quiet enjoyment and their right to use the leased area in accordance with the purpose of the lease. The court also found that the Glovers were the "prevailing party" for purposes of the lease's attorney fee provision and awarded fees and costs to the Glovers. Canaday appeals.

## II. ANALYSIS

### A. Unlawful Detainer

We review summary judgment orders de novo, "considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

Canaday contends that the trial court's dismissal of his counterclaim alleging unlawful detainer, before a hearing on the matter, was "premature."[2] Specifically, he

---

[2] The Glovers urge us to decline to consider Canaday's appeal because his briefing violates the Rules of Appellate Procedure. The Glovers contend that Canaday does not properly assign error in accordance with RAP 10.3(a)(4) (generally requiring assignments of error) or RAP 10.3(g) (requiring separate assignments of error for each factual finding challenged with reference to the finding by number). But Canaday's brief assigns error to the summary judgment order and findings and conclusions following the bench trial and his notice of appeal identifies the specific findings of fact and conclusions of law he challenges. We can discern the rulings and findings Canaday challenges and address the appeal on the merits.

maintains that the court dismissed his claim on September 8, 2021, although the "deadline to serve notice of an unlawful detainer hearing" had not yet expired. Although not entirely clear, Canaday appears to rely on RCW 59.12.070, which requires an unlawful detainer summons to state a return date of not less than 7 nor more than 30 days from the date of service.[3]

Canaday attempted to begin an unlawful detainer action by filing a counterclaim, not an unlawful detainer summons.[4] And it is unclear how the statutory requirements for such a summons, or the timeframe for a designated date for a tenant's response, precluded dismissal of his claim.

Unlawful detainer is a special proceeding under chapter 59.12 RCW. It is a summary proceeding authorized by statute to determine the narrow issue of right to possession of a premises between landlord and tenant. Munden v. Hazelrigg, 105 Wn.2d 39, 45, 711 P.2d 295 (1985). "In an unlawful detainer action, the court sits as a special statutory tribunal to summarily decide the issues authorized by statute and not as a court of general jurisdiction with the power to hear and determine other issues." Granat v. Keasler, 99 Wn.2d 564, 571, 663 P.2d 830 (1983) (emphasis omitted). Thus, issues unrelated to possession cannot be resolved in an unlawful detainer action; those issues must be addressed in a general civil action. Angelo Prop. Co. v. Hafiz, 167 Wn. App. 789, 809, 274 P.3d 1075 (2012).

---

[3] In arguing that he was entitled to a show cause hearing, Canaday cites a provision that applies to residential property. See RCW 59.18.370; Indigo Real Estate Servs., Inc. v. Wadsworth, 169 Wn. App. 412, 421, 280 P.3d 506 (2012).

[4] On the same date as the summary judgment hearing, after the trial court dismissed his counterclaim, Canaday filed an "Eviction Summons." Canaday later said at trial that the parties agreed to withdraw the filing.

Beginning an unlawful detainer proceeding requires the use of a special form of summons. RCW 59.12.070-.080. Parties must substantially comply with the statute's requirements for process. Sprincin King Street Partners v. Sound Conditioning Club, Inc., 84 Wn. App. 56, 61, 925 P.2d 217 (2007); Markland v. Wheeldon, 29 Wn. App. 517, 522, 629 P.2d 921(1981); Kelly v. Schorzman, 3 Wn. App. 908, 912-13, 478 P.2d 769 (1970). Noncompliance with the statutory method of process "precludes the superior court from exercising subject matter jurisdiction over the unlawful detainer proceeding." Christensen v. Ellsworth, 162 Wn.2d 365, 372, 173 P.3d 228 (2007); Housing Resource Grp. v. Price, 92 Wn. App. 394, 401, 958 P.2d 327 (1998). A party does not substantially comply, for instance, by using a general form of summons instead of the special statutory summons required for unlawful detainer proceedings. Kelly, 3 Wn. App. at 912-13. Canaday could not avail himself of the special statutory unlawful detainer procedures by filing a counterclaim in the tenant's lawsuit that involved issues other than possession. The trial court properly granted the Glovers' motion for summary judgment as to the claim.[5]

B. Quiet Enjoyment

Canaday next contends the trial court erred in concluding that he breached the covenant of quiet enjoyment. We agree.

Our review of evidence from a bench trial is limited to determining whether the trial court's contested findings of fact are supported by substantial evidence and

---

[5] We need not reach the Glovers' alternative argument that summary judgment dismissal was warranted because Canaday's amended notice to comply or vacate the leased premises lacked the specificity required by RCW 59.12.030(4) (tenant is in unlawful detainer status if he or she continues to possess leased property after failing to "keep or perform any condition or covenant" of the lease, and after violating such condition within ten days after proper written notice).

whether those findings support the conclusions of law. Yorkston v. Whatcom County, 11 Wn. App. 2d 815, 831, 461 P.3d 392, review denied, 195 Wn.2d 1020, 464 P.3d 202 (2020). "Substantial evidence is the 'quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" Yorkston, 11 Wn. App. 2d at 831 (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). We review questions of law de novo. Yorkston, 11 Wn. App. 2d at 831.

The covenant of quiet enjoyment, an express provision of the lease, ensures the tenant's possession will not be disturbed by the landlord. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.30, at 350 (2004). Generally, the covenant "secures the tenant from any wrongful act by the lessor which impairs the character and value of the leased premises or otherwise interferes with the tenant's quiet and peaceable use and enjoyment thereof." Cherberg v. Peoples Nat'l Bank of Wash., 15 Wn. App. 336, 343, 549 P.2d 46 (1976), rev'd in part on other grounds, 88 Wn.2d 595, 564 P.2d 1137 (1977).

Courts have found a breach of the covenant of quiet enjoyment in various factual settings. For instance, a breach occurs when a landlord prevents the tenant from possessing the leased property, Draper Mach. Works, Inc. v. Hagberg, 34 Wn. App. 483, 486, 663 P.2d 141 (1983), or locks a tenant out of the leased property, Olin v. Goehler, 39 Wn. App. 688, 692, 694 P.2d 1129 (1985). It may also occur when a landlord fails to remediate a severe pest infestation, Washington Chocolate Co. v. Kent, 28 Wn.2d 448, 454, 183 P.2d 514 (1947), fails to make leasehold habitable by making potable water available, Tucker v. Hayford, 118 Wn. App. 246, 254, 75 P.3d 980 (2003), abrogated on other grounds by Gerlach v. Cove Apartments LLC, 196 Wn.2d 111, 471

P.3d 181 (2020), or fails to ensure the property is in adequate condition to avoid closure by the government. Cherberg, 88 Wn.2d at 600. A landlord who undertakes construction work that interferes with the tenant's use of the property may also be liable for breaching the covenant of quiet enjoyment. See Bancroft v. Godwin, 41 Wash. 253, 253-42, 83 P.189 (1905) (landlord improperly supervised remodel, allowing water leak to damage tenant's goods); Matzger v. Arcade Bldg. & Realty Co., 102 Wash. 423, 424-26, 428, 173 P. 47 (1918) (landlord made leasehold unusable for intended purpose by modifying part of building under its control depriving leasehold of natural light required for tenant's business). As these decisions illustrate, a breach of the warranty of quiet enjoyment occurs when, on account of the landlord's actions, the tenant is actually or constructively evicted from the leased premises. Foley v. Smith, 14 Wn. App. 285, 291, 539 P.2d 874 (1975); see 17 STOEBUCK & WEAVER, supra, §§ 6.31-6.32, at 351-53.

Canaday merely made demands on the Glovers and asserted rights in accordance with his interpretation of the lease. To be sure, with one exception, the trial court rejected Canaday's interpretation of the lease. But still, Canaday's conduct did not interfere with the Glovers' ability to use or possess the property. See 17 STOEBUCK & WEAVER, supra, § 6.30 at 350 ("It is generally accepted that the covenant of quiet enjoyment is breached only when the tenant is physically disturbed in possession, not, for instance, when a disturbance is only threatened."). As the Glovers acknowledge, in asserting the right to take certain actions on the leased area, Canaday did no more than "attempt[] to wrongfully interfere" with their "beneficial enjoyment of the lease premises." The court made no finding that Canaday physically disturbed the Glovers' possession or

use of the leasehold.  Thus, the trial court's findings do not support its conclusion that Canaday breached the covenant of quiet enjoyment.

Nevertheless, Canaday is not aggrieved by the error because the trial court awarded no damages on account of the breach.  See RAP 3.1 (only an aggrieved party may seek appellate review).  This court reverses only when a party establishes prejudicial error.  Driggs v. Howlett, 193 Wn. App. 875, 903, 371 P.3d 61 (2016); Thomas v. French, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983) ("[E]rror without prejudice is not grounds for reversal.").  Error is prejudicial if it affects, or presumptively affects, the outcome.  James S. Black & Co. v. P & R Co., 12 Wn. App. 533, 537, 530 P.2d 722 (1975).  The error here did not affect the outcome and it is unnecessary to remand for the trial court to strike the unsupported conclusion of law.

C. Interpretation of Lease

Canaday claims the trial court inappropriately "added terms" to the lease by construing it to provide that "reasonable" access allows him to inspect the leased area a specific number of times and to require an arborist's report before any trees may be removed.  But the court expressly declined to find that the removal of trees requires an arborist's report, and the findings and conclusions do not suggest otherwise.  And, as to the court's determination of what amounts to reasonable access under the lease, Canaday did not object below to the trial court's resolution of that issue.  In fact, he agreed that "interpretation of the lease is a necessary part of the Court determining breach" and specifically sought a "declaratory ruling as to what Mr. Canaday can and can't do on this property."

11

D. Attorney Fees

Finally, Canaday challenges the trial court's determination that the Glovers prevailed in the proceeding.[6]

Washington courts follow the "American Rule," where each party pays its own attorney fees unless an award is authorized by contract, statute, or a recognized ground in equity. Dave Johnson Ins. Inc. v. Wright, 167 Wn. App. 758, 783, 275 P.3d 339 (2012). Here, the lease provides that if either party sues to enforce the lease or to protect its interest in the leased premises, the "prevailing party" is entitled to recover costs and attorney fees.

A prevailing party is any party that receives a final judgment in their favor. In re Estate of Carter, 11 Wn. App. 2d 573, 589 n.7, 455 P.3d 197 (2019). If neither party prevails entirely, "then the determination of who is a prevailing party depends upon who is the substantially prevailing party." Riss v. Angel, 131 Wn.2d 612, 633, 934 P.2d 669 (1997). "Whether a party is a 'prevailing party' is a mixed question of law and fact that we review under an error of law standard." Hawkins v. Diel, 166 Wn. App. 1, 10, 269 P.3d 1049 (2011).

Canaday maintains that the outcome was "effectively a draw" since the trial court concluded that the Glovers breached the lease but also dismissed his claim for unlawful detainer. We disagree.

As the trial court found, the Glovers had little choice but to file suit in order to protect their right to continue to use and possess the leasehold, in the face of

---

[6] Canaday raises a number of issues in his reply brief that are not addressed in his opening brief. We decline to reach those arguments raised for the first time in his reply brief. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

Canaday's notice to comply or vacate. The primary relief the Glovers sought was a declaration that they did not breach the lease, to avoid a later finding that they were in the status of unlawful detainer. The court agreed with the Glovers' interpretation of the lease on virtually all issues and concluded they had not materially breached the lease. The Glovers also successfully defended against Canaday's primary claim that sought to terminate the lease. The trial court did not err in determining that the Glovers substantially prevailed, despite our contrary conclusion that Canaday did not breach the covenant of quiet enjoyment. We affirm the trial court's ruling that the Glovers substantially prevailed and were entitled to attorney fees and costs under the lease.

E. Attorney Fees on Appeal

"A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." Hwang v. McMahill, 103 Wn. App. 945, 954, 15 P.3d 172 (2000). Both parties request an award of appellate fees under the lease, which provides for such an award to the prevailing party. Because the Glovers substantially prevail on appeal, we award reasonable attorney fees on appeal to the Glovers, subject to their compliance with RAP 18.1.

Affirmed.

_____Mann, J._____

WE CONCUR:

_____          _____Smith, A.C.J._____

13